**RESOLUTION TRUST CORPORATION in its Capacity as Receiver of River City Federal Savings Bank**

v.

**AMERICAN TITLE INSURANCE COMPANY.**

**Civ. A. No. 92–219 B.**

United States District Court, M.D. Louisiana.

Sept. 5, 1995.

Susannah M. DeNicola, Roy, Kiesel & Tucker, Baton Rouge, LA, for plaintiff.

Todd A. Rossi, Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, Baton Rouge, LA, for defendant.

### *ORDER AND REASONS*

MENTZ, District Judge.

Before the court is a motion by American Title Insurance Company (American Title) for summary judgment. Having reviewed the parties' briefs and the applicable law, the court finds that summary judgment is warranted.

### I.

 The court addresses first the claim against American Title based on the Lagniappe Square loans. On this claim, the RTC seeks to recover from American Title losses sustained by River City Federal Savings Bank (River City) allegedly caused by the gross negligence or fraud of American Title's agent, Glenn Dupree.

The following facts are undisputed. Glenn Dupree acted for many years as an agent for American Title. He also served as co-general counsel for River City and acted as closing attorney on many River City loans, including the Lagniappe Square loans. In reviewing the abstract documents for the Lagniappe Square property, Dupree discovered that

River City's President, Neal Dellocono, and Director, Ed Revel, were members of a partnership that owned the Lagniappe Square property to be sold and on which River City was to loan money to the purchasers.

The RTC alleges that Dupree also discovered that River City loaned not only the first mortgage money at 80% of an inflated value on the Lagniappe Square property, but also made unsecured loans to the same borrowers for the down payments. American Title disputes that Dupree had knowledge of this fact, but this dispute is not material to the outcome of this motion.

The RTC's claim against American Title is that Dupree, as American's agent, failed to fulfill a duty to disclose to River City officials (other than the President Dellocono and the director Revel) that the loan transaction was illegal.[1] The RTC has not sued Dupree in this suit in his capacity as closing attorney for River City. The RTC's claim against American Title does not involve any claim against the title policy. The parties agree that there are no defects in the titles on the properties which were the security for the Lagniappe Square loans.

There is no evidence that American Title and/or its agent, Dupree, acted in violation of any terms of its contract with River City. Review of the policy language reveals that the policy did not insure against the improper disbursement of real estate closing funds, nor did it insure the honesty, fidelity, and competence of its agent. There is no evidence of any written guaranteed closing letters which would evidence a guarantee by American Title for the proper disbursement of the real estate closing proceeds associated with the Lagniappe Square Loans,[2] nor is there any other type of evidence that American Title assumed any obligation to inform River City of an improper disbursement.

Contrary to the RTC's position, Dupree's agency with American Title did not authorize him to act as an escrow agent. Under the clear terms of the agency agreement, American Title expressly denied Dupree the authority to receive or receipt for any funds, including escrow funds, in the name of American, but was to receive and receipt for funds, including escrow funds, for Dupree's own account:

> Attorney agrees not to receive nor receipt for any funds, including escrow funds, in the name of American, but shall receive and receipt for funds, including escrow funds, for its own account.

Agreement for Appointment of Policy–Writing Attorney for American Title Insurance Company, dated April 11, 1978, Exhibit 20 to American Title's Motion for Summary Judgment; *see* Affidavit of Becky Schaffer, Assistant Vice President and Senior Claims Counsel for Fidelity National Title Company (successor in interest of American Title). In fact, there is no evidence that Dupree handled or escrowed funds as agent for American Title.

Under these circumstances, the court finds American Title assumed no liability beyond its insurance policy's coverage. Dupree, as agent for American Title, did not have a duty to disclose to River City, the lender and policy holder, irregularities, illegalities, or acts of fraud in the loan transaction. Therefore, any failure of Dupree to disclose information to River City does not create any liability for American Title. *See Cameron Co. Savings Assoc. v. Stewart Title Guaranty Co.*, 819 S.W.2d 600 (Ct.App.Tex.1991).

## II.

■ The RTC's second claim arises from a loan to Edward Warmack in 1984 for the purchase of commercial real estate. In conjunction with the loan closing, American Title issued a title insurance policy to River City. Warmack allegedly defaulted on the loan and

---

1. There is no genuine dispute that Dupree contacted Dellocono and asked Dellocono if he had disclosed to River City that he owned an interest in Lagniappe Square Partnership. Dellocono informed Dupree that disclosures were made and that there was no conflict of interest because the Lagniappe Square loans were being sold in the secondary market.

2. The RTC admitted this fact with the caveat that the RTC "does not stipulate that an insured closing letter or other similar assurances never existed." This caveat does not preclude summary judgment because there is no evidence to suggest that such a letter ever existed.

River City attempted to seize and sell the property. The RTC alleges that title defects prevented the foreclosure, and seeks to recover under the title policy issued by American Title.

While this suit was pending, the RTC assigned the mortgage and note to Federated Financial Services, Inc. (Federated). In the Loan Sale Agreement with Federated, the RTC specifically retained all causes of action against the title insurer of the loan, American Title.[3]

American Title argues that by virtue of the transfer of the note and mortgage to Federated, the RTC is no longer an insured under the policy.

The title insurance policy defines "insured" as:

[T]he insured named in Schedule A. The term "insured" also includes (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness....

The RTC is the successor in interest to River City. Federated is the successor in interest to the RTC. It is uncontested that the RTC transferred the note and mortgage to Federated without any reservation of interest in the note and mortgage. The terms of the contract between the RTC and Federated reserving the RTC's right to pursue this cause of action does not create any rights in the note and mortgage. As the RTC has no ownership or other interest in the note and mortgage, it is not an insured under the title policy, and has no right to recover against American Title.

 American Title also argues that the RTC prejudiced its subrogation rights, and further that the RTC did not timely notify American Title of a possible loss, contrary to the RTC's obligations under the policy. Having found that American Title is not an insured under the policy, it is not necessary to discuss these claims. However, in the interest of judicial economy the court notes that neither claim would be successful. American Title's subrogation rights have not been impaired because it now is subrogated to Federated's rights and remedies in the note and mortgage. The RTC's failure to give reasonable notice does not terminate American Title's obligations under the policy because American Title has offered no evidence to bolster its allegation of prejudice.

Accordingly,

IT IS ORDERED that the defendant's, American Title Insurance Company, Motion for Summary Judgment is **GRANTED,** dismissing with prejudice all claims of the plaintiff, the Resolution Trust Corporation.

---

3. The Loan Sale Agreement provides in Article XVII, p. 31 that:

Buyer and Seller agree that the sale of the Loans pursuant to this Agreement shall exclude the transfer to Buyer of any and all claims and/or causes of action Seller or the Resolution Trust Corporation has or may have ... (iii) against any title insurer or other party from whom Seller or any Servicing Agent contracted services or title insurance in connection with the making, insuring or servicing of any of the loans.